UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:23CR00526 SEP |
| ANTONIO JONES, | ) |
| Defendant. | ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree as follows:

1. **PARTIES**

The parties are the defendant Antonio Jones, represented by defense counsel Nicholas Williams, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 4, 6, and 9 of the Indictment, the Government agrees to move for dismissal as to Counts 1, 3, 5, and 8 at the time of sentencing. The Government also agrees that no further federal prosecution will be brought in this District relative to the defendant's participation in a conspiracy to commit money laundering or money laundering between March 2021 and May 2021, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. Notwithstanding the calculation of the offense level and the defendant's criminal history, the parties further to jointly recommend a sentence of 37 months' imprisonment at the time of sentencing.

**3.   ELEMENTS**

As to Counts 4, 6, and 9, the defendant admits to knowingly violating Title 18, United States Code, Section 1956, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are: (1) the defendant conducted a financial transaction, that is the transfer of U.S. currency, which affected interstate or foreign commerce; (2) the defendant conducted the financial transaction with money that involved the proceeds of the unlawful distribution of a controlled substance; (3) at the time the defendant conducted the financial transaction, he knew the money represented the proceeds of some form of unlawful activity; and (4) the defendant conducted the financial transaction knowing that the transaction was designed to conceal or disguise the nature, location, source, ownership or control of the funds.

**4.   FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In June 2019, the Drug Enforcement Administration began an investigation into a criminal money laundering organization involving the movement of drug proceeds from the United States to Mexico and Central and South American locations. DEA agents and investigators, working in

an undercover capacity, acted as brokers and middlemen to collect the drug proceeds and transfer them back to the money laundering organization.

In or before March 2021, the defendant entered into an agreement with codefendants Carl Von Garrett and Luis Miguel Hernandez to violate the substantive provisions of the money laundering statute. In March 2021, a contract was arranged by a Mexican money broker to pick up cash that was the proceeds from narcotics sales from an undercover officer (UC-2) in St. Louis. On March 1, 2021, UC-2 spoke with codefendant Luis Miguel Hernandez and arranged to meet. Codefendant Carl Von Garrett drove Hernandez to meet with UC-2 and Hernandez delivered $100,095 which was transferred back to the Mexican money broker through undercover bank accounts.

On March 5, 2021, Hernandez again contacted UC-2 to arrange to deliver cash that was the proceed from narcotics sales for transfer back to the Mexican money broker. On March 8, 2021, Hernandez sent a text to UC-2 stating: "My people is on hes way." Shortly after the text message, the defendant called UC-2 to arrange the time and location of the meeting. UC-2 then met with the defendant who handed UC-2 a bag containing $100,000. The cash was transferred back to the Mexican money broker through undercover bank accounts.

The following week, Hernandez contacted UC-2 to arrange another money drop. Hernandez had the defendant contact UC-2 to arrange the time and location of the meeting. On March 17, 2021, the defendant met with UC-2 and gave UC-2 $150,030 to be transferred to the Mexican money broker.

On March 31, 2021, Hernandez contacted UC-2 about delivering cash. During the text exchanges, Hernandez said that he "just handed [the defendant] everything" and that the defendant

3

was on his way. The defendant met with UC-2 and gave UC-2 $100,000. The $100,000 was the proceeds from drug sales and was transferred to the Mexican money broker.

On April 1, 2021, DEA received court authorization to monitor communications to and from Hernandez's phone. Investigators intercepted calls between Hernandez and other individuals discussing the pricing, packaging and quantities of narcotics being sold in the St. Louis area. During 2021, undercover investigators picked up drug proceed from the defendant Antonio Jones on multiple occasions. During court authorized wiretaps over Hernandez's phone, Hernandez was intercepted discussing the collection of drug proceeds and the price of narcotics.

On April 8, 2021, the defendant delivered $109,740 in drug proceeds to UC-2. On May 18, 2021, the defendant delivered $100,100 in drug proceeds to UC-2. On May 25, 2021, the defendant delivered $100,100 in drug proceeds to UC-2. The defendant knew that the cash transferred to the undercover officers involved the proceeds of a specified unlawful activity and that the transfer of the money was designed to conceal the nature, location, source, ownership, or control of the proceeds of the unlawful activity.

5. **STATUTORY PENALTIES**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than twenty years, a fine of not more than twice the value of the laundered proceeds, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years.

6. **U.S. SENTENCING GUIDELINES (2023 MANUAL)**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

   a. **Chapter 2 Offense Conduct:**

   (1) **Base Offense Level:** The parties agree that the base offense level is 22, as found in Section 2S1.1(a)(2) and Section 2B1.1(b)(1)(H) because the value of the laundered funds exceeded $550,000.

   (2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: Two levels should be added because the defendant was convicted under Title 18, United States Code, Section 1956.

   b. **Chapter 3 Adjustments:**

   (1) **Mitigating Role:** The parties recommend that two levels be deducted pursuant to Section 3B1.2 because the defendant was a minor participant in the criminal activity.

   (2) **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if the defendant is otherwise eligible, then the Government moves to deduct one additional level pursuant to U.S.S.G. § 3E1.1(b), because the defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. The parties agree that the defendant's eligibility for this deduction is based

upon information presently known. If the Government subsequently receives new evidence of statements or conduct by the defendant which it believes are inconsistent with the defendant's eligibility for this deduction, the Government may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

      c. **Other Adjustment(s)/Disputed Adjustments:** The parties have no further agreement regarding any other adjustments.

      d. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 19.

      e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

      f. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein, and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**

    **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, and the guilty plea.

    **(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

    **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER**

   a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

   b. **Civil or Administrative Actions not Barred; Effect on Other Government Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the defendant.

   c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

   d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

  **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

  **f. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

  **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during their investigation, whether they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS**

  In pleading guilty, the defendant acknowledges, fully understands and, hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the

attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, because of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11.   CONSEQUENCES OF POST-PLEA MISCONDUCT**

After pleading guilty and before sentencing, if the defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA

Pursuant to Federal Rule of Criminal Procedure 11(c) and (d), the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

10/3/24
Date

JEANNETTE S. GRAVISS, #44483(MO)
Assistant United States Attorney

10-3-24
Date

ANTONIO JONES
Defendant

10/3/2024
Date

NICHOLAS WILLIAMS
Attorney for Defendant