UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 4:23-cr-00526-SEP |
| ) | |
| ANTONIO JONES, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE**

Defendant Antonio Jones, through attorney Nicholas Williams, respectfully requests this Honorable Court grant a downward variance and follow the parties' joint recommendation for a sentence of 37 months. Such a term is sufficient, but not greater than necessary to accomplish the statutory sentencing factors set forth in 18 U.S.C. § 3553(a). In support, he states:

Like many people who grow up poor, Antonio Jones has tended to view money through a lens of inaccessibility. This has not been the product of choice; rather, it represents an indelible psychic imprint formed during a childhood of unimaginable insecurity. One must bear this context in mind when considering this case for what it is: an ill-advised effort to obtain easy money—something that has otherwise felt elusive since Antonio's earliest years. His overall role in the offense was limited, as reflected by the minor participant adjustment to his guideline range. Given this fact, along with Antonio's disproportionately challenging upbringing and his dearth of criminal history

over the last two decades, he believes—along with the Government—that a minor variance sentence of 37 months is appropriate.

Life is going to start hard for anyone born to a 13-year-old mother.  As his father was also a mere teenager when Antonio entered the world, he spent his youngest years bouncing between his grandmother and maternal aunt.  Surely, this inability to form permanent attachments as an infant—especially with his biological parents—would have a deleterious impact on Antonio's young psyche.  Thus, from the very beginning, he was forced to navigate the vicissitudes of life from a position of significant disadvantage.

While Antonio's parents attempted to form a nuclear family a couple of years into his life, their efforts really represented a pressured attempt to mitigate the stigma of a teenage pregnancy.  As the two predictably began to wear on one another, their interactions became more and more hostile.  The incessant arguing ultimately escalated into physical violence, which they perpetrated against both the kids and one another.  Aside from enduring his own beatings, Antonio remembers traumatically bearing witness to his father dragging his mother down the basement stairs while she was kicking and screaming.  Understandably, Antonio's parents could not prevail as a married couple and divorced when he was ten.  While this would ultimately spare him the trauma of their toxic relationship, it also opened the door to a host of new problems.

Around the time of his parents' divorce, Antonio's mother found refuge in crack cocaine.  Almost instantaneously, Linda Jackson's life was consumed with chasing the hungry ghost of crack's fleeting high.  Accordingly, she became even more abusive to her son—when she wasn't neglecting him outright.  As a result, Antonio was sent to live with his father full time.

While Reginald Jones did not suffer the affliction of substance use disorder, he did have significant problems with anger management.  And he took much of it out on his children.  As a stern disciplinarian, nearly every one of his children's perceived misdeeds resulted in some form of corporal punishment.  Antonio remembers being beaten with belts, extension cords, switches, and even closed fists.  On one particularly bad day, he watched his father punch his little sister in the face so hard that she lost some of her teeth.  This persistent abuse resulted in more than a few visits from Child Services, and Antonio was eventually relocated back to his grandmother's.

Agnes Jackson provided some respite for the Jones children; nevertheless, she was limited by her poverty.  Deaf and on disability, Ms. Jackson lived in a small, subsidized apartment.  Unable to meet the kids' basic needs, they once again began shuffling between her tiny home and that of Antonio's maternal aunt.  As Debbie Jackson also lived a fraught, impoverished existence, the kids routinely went without food.  There were even occasions when Debbie would kick Antonio out of the home for having the audacity to eat from the household's food supply.

Predictably, Antonio spent a lot of his time on the streets of the terrible, impoverished neighborhoods where he came up.  Lacking meaningful adult supervision and wholesome male guidance, he fell easy prey to the various unsavory street characters who occupied that world.  Before long, Antonio was taken in by the immature allure of drug culture and supporting himself by illicit means.  Consequently, he witnessed violence on an epic scale.  Before ever even reaching adulthood, Antonio would see multiple people gunned down and lose many of his close friends.  He would also fall victim himself, having been deliberately hit by a car on three separate occasions.

Antonio now walks with a metal rod in his lower right leg and still experiences extreme discomfort in myriad forms. To this day, he takes no fewer than six separate medications to manage the many symptoms arising from his assault-borne injuries.

Given the incessant hardship and trauma that Antonio was forced to endure from very early in his life, it should come as little surprise that he would turn to self-medication. If we view addiction as an "anxiety-management technique[] the purpose of which is to lower the level of psychic distress we feel at any given moment,"[1] then it is quite remarkable that Antonio's chemical compulsions only ever involved marijuana and alcohol. As someone whose "psychic level of distress" must have been extreme, Antonio could have easily gravitated toward substances with stronger anesthetizing or dissociative effects, like opiates or PCP. Regardless of the form it took, however, Antonio's need to pursue chemical relief predictably took root at an early age. He was drinking by age 14 and started daily marijuana use only one year later. This trajectory has remained consistent throughout Antonio's life, and he is coming to terms with the reality that he will need to process his challenging past in order to truly move past the addiction compulsions that have followed him into adulthood. As James Hollis explains, "[t]o ever break the stranglehold of addiction, one is going to have to face what the compulsive behavior is a defense against."[2] As we have seen, Antonio's history is rife with abject hardship. Having explored this reality with counsel, he is ready to tackle his past in a clinical setting—both while confined and during any term of supervised release—and anticipates a cleaner and clearer life on the other side of his sentence as a result.

---

[1] James Hollis, *Finding Meaning in the Second Half of Life*, p. 227.
[2] *Id.*

In addition to being armed with the necessary seeds of self-awareness to facilitate a positive trajectory after his release from confinement, Antonio is also free from many of the barriers that often thwart the re-entry process. To begin, he was recently married and has a very supportive partner who has been by his side—both literally and figuratively—through every step of this process. Additionally, he is over 50, which significantly decreases any threat of recidivism. Finally—and perhaps most importantly—he is postured to hit the ground running with respect to finding and maintaining a good job. Aside from having his GED and a valid driver's license, Antonio has been a member of the Local 97 Carpenters Union for 15 years. As such, he is a remarkably skilled laborer who has completed multiple certifications including a Journeyman Leadership Program, Scaffold User and Erector Qualifications, Powered Industrial Truck Operator, OSHA 10 Construction, and an Aerial Lift Operator Qualification. Accordingly, he is more vocationally qualified than many of the criminal defendants who come through this courthouse and thus well-situated to enjoy a successful term of supervision once released from BOP.

Antonio Jones hails from an astonishingly challenging background, and his early criminal life tracks the misguided youthful efforts of someone who was given very little support by others. With the one exception of a misdemeanor assault charge from his early 20's, Antonio's record is remarkably devoid of violence. His last felony conviction dates back more than 20 years to 2004.[3] His role in the instant offense was isolated and limited, as indicated by his "minor participant" adjustment under the guidelines. Newly married and vocationally competent, Antonio is in a good position to succeed upon

---

[3] Mr. Jones acknowledges being convicted of marijuana possession in 2014, but notes that case—which resulted in a term of probation that he successfully completed—has since been expunged.

release from BOP.  Knowing now that his efforts will only be buttressed by addressing his history of trauma and the addictive impulses that arose in its wake, he is eager to avail himself of the federal system's services as they relate to mental health and substance use disorders.  In light of all these factors, he asks that this Honorable Court follow the parties' joint recommendation and impose a sentence of 37 months.  Such a term is fair, just, and follows the spirit of § 3553(a).

Dated: January 8, 2024                     Respectfully submitted,

/s/ Nicholas Williams
Nicholas Williams, #62617MO
1401 South Brentwood Boulevard, Suite 500
St. Louis, Missouri 63144
Phone: (314) 863-6363
Fax: (314) 727-2869
E-Mail: Nicholas.Williams@KesslerWilliams.com

*Attorney for Defendant Antonio Jones*

**CERTIFICATE OF SERVICE**

I certify on January 8, 2024, the foregoing was filed electronically with the Clerk of the Court by operation of the Court's electronic filing system and served upon the Assistant United States Attorney.

/s/ Nicholas Williams
Nicholas Williams